# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN LIPPERT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant.<br>_____/ | Case No. 1:21-cv-01815-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.   INTRODUCTION

Plaintiff Ryan Lippert ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.   BACKGROUND

Plaintiff was born on June 28, 1979, and has at least a high school education. (Administrative Record ("AR") 29, 108, 113, 154, 170, 190.) In a decision dated February 7, 2018, an Administrative Law Judge ("ALJ") rejected Plaintiff's prior application for SSI payments,

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 9.)

assessing a residual functional capacity ("RFC")[2] of a full range of work at all exertional levels, but with some nonexertional limitations.  (AR 135–52.)

On April 17, 2018, Plaintiff again applied for SSI payments, alleging she became disabled on June 28, 2002, due to post-AIDS complications, schizophrenia, post-traumatic stress disorder ("PTSD"), brain damage due to AIDS, nerve damage, blind right eye, syphilis, and chronic fatigue. (AR 20, 153–54, 170–72, 190, 194, 203.)  Plaintiff was 38 years old on the date the present application was filed.  (AR 153, 171.)

**A.    Relevant Evidence of Record[3]**

Plaintiff reported first testing positive for syphilis in November or December of 2017.  (AR 514, 516.)  In June 2018, Plaintiff saw Dr. Mary McLain, M.D., at Clinica Sierra Vista. (AR 514.) Dr. McLain noted that Plaintiff had continued memory issues, her memory was poor, and it was likely AIDS-related dementia which may have been precipitated by syphilis, among other conditions.  (AR 514.)  Dr. McLain asked for help from a care manager, given that Plaintiff was not able to remember things sufficiently in order to attend all her appointments or to get a ride, and because Plaintiff became easily confused.  (AR 514.)  Dr. McLain noted diagnoses for memory disorder due to organic brain damage, a history of syphilis, anxiety and depression, and unspecified major depressive disorder.  (AR 515, 517.)

In March 2019, Plaintiff reported that she recently got syphilis for the second time.  (AR 549–52.)  Plaintiff indicated she had a therapist before, but started having transportation issues, and she had gaps in her treatment due to negative experiences with medical providers.  (AR 552.) Plaintiff's treatment notes indicated diagnoses of unspecified major depressive disorder, anxiety, and depression.  (AR 552–53.)

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling 96-8p (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

In October 2019, Plaintiff again visited Dr. McLain at Clinica Sierra Vista. (AR 590.) Dr. McLain noted a diagnosis of neurosyphilis, and that Plaintiff complained of memory loss, paresthesias, and nerve pain. (AR 590–91, 593, 596.) The treatment notes indicated that Plaintiff's neurosyphilis was associated with AIDS and dementia, for which Plaintiff had been diagnosed before being transferred to the clinic. (AR 591.)

In October 2020, Plaintiff underwent a mental health assessment with Licensed Clinical Social Worker ("LCSW") Elizabeth Lopez. (AR 635.) LCSW Lopez noted diagnoses of a severe episode of recurrent major depressive disorder with psychotic features, generalized anxiety disorder with panic attacks, and PTSD. (AR 635, 637.) Pursuant to a mental status exam, LCSW Lopez found Plaintiff's mood to be sad, worried, and anxious, her thought content to indicate depressive cognitions, and her thought process to be distractible. (AR 635.) Plaintiff's depression symptoms consisted of sadness, loss of interest, insomnia, fatigue, irritability, and lack of motivation. (AR 636.) She also exhibited trauma and panic symptoms including flashbacks, sleep disturbances, poor focus, palpitations, trembling, shortness of breath, nausea and gastrointestinal distress, chills, and abnormal sensations. (AR 636.) Plaintiff also had thoughts of suicidal ideations, but noted she does not have an intent or plan to commit suicide. (AR 636.) Plaintiff reported regularly experiencing paranoia and hypervigilance, and how when she acquired syphilis in 2017, it affected her brain. (AR 636.) Accordingly, LCSW Lopez referred Plaintiff to a specialty behavioral health program. (AR 637–38.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on June 12, 2018, and again on reconsideration on September 13, 2018. (AR 20, 169–70, 188–90, 194–95, 203.) Consequently, Plaintiff requested a hearing before an ALJ. (AR 209.) The ALJ conducted a hearing on June 10, 2020. (AR 100-34.) Plaintiff appeared at the hearing with her attorney representative and testified as to her alleged disabling conditions and work history. (AR 108–26.) A Vocational Expert also testified at the hearing. (AR 126–32.)

**C.    The ALJ's Decision**

In a decision dated November 25, 2020, the ALJ found that Plaintiff was not disabled, as

3

defined by the Act. (AR 17–31.) The ALJ noted that Plaintiff was found to be not disabled in the decision from 2018, and in light of that decision, that the ALJ would now need to assess Plaintiff's current application in light of the presumption of continuing nondisability under the Ninth Circuit's decision in *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). (AR 21.)

The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 20–31.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since April 17, 2018, the application date (step one). (AR 23.) At step two, the ALJ found Plaintiff's following impairments to be severe: "[r]esidual from retinitis;" "[r]esiduals from syphilis;" chronic obstructive pulmonary disease; anxiety disorder; depressive disorder; and PTSD. (AR 23.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 24–25.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] would be limited to jobs that requires nothing beyond monocular vision such as jobs that can be performed with single-eyed vision. [Plaintiff] should not work in environments that expose her to extreme levels of cold temperatures, extreme levels of moisture/wetness, extreme levels of vibrations, or concentrated forms of respiratory irritants such as gases, smokes, and fumes. [Plaintiff] should not work in environments that exposes her to unprotected heights or machinery with moving mechanical parts. [Plaintiff] is capable of performing non-complex jobs that require no more than simple routine tasks and should not work in environments where they could have contact with members of the general public.

(AR 25–26.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective statements as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 27.) The ALJ also noted Plaintiff was found "not disabled" in the

prior decision, and explained that much of the evidence provided by Plaintiff covered the already adjudicated period, and that the evidence from February 8, 2018, forward revealed minimal abnormalities and generally stable objective findings. (AR 27.) The ALJ further noted all four state agency reviewing sources found that the *Chavez* rule applied, there was a presumption of continuing nondisability, and they fully adopted the findings of the prior ALJ. (AR 29.) The ALJ also found that there were no medical opinions that supported finding functional limitations that differed from those detailed in the prior ALJ's decision. (AR 29.)

The ALJ determined that Plaintiff had no past relevant work (step four) and that, given her RFC, she could perform a significant number of jobs in the national economy, specifically linen room attendant, garment sorter, and document specialist (step five). (AR 29–30.) The ALJ concluded Plaintiff was not disabled since April 17, 2018, the application date. (AR 30.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on October 21, 2021. (AR 5–10.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*,

253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ erred, *inter alia*, by misapplying the *Chavez* presumption of continuing nondisability because substantial evidence does not support a finding of no changed circumstances. (Doc. 17 at 2, 11–20.) The Court agrees.

**A.    A Prior Final Agency Decision of Nondisability Triggers a Presumption of Continued Nondisability Absent a Showing of Changed Circumstances**

In cases involving a prior final agency decision of nondisability where the claimant subsequently files a new application for benefits, the prior administrative decision triggers a presumption of continuing nondisability. *Chavez v*, 844 F.2d at 692–94 (where ALJ made "no reference" to prior ALJ's decision and "failed to consider the first judge's findings," the principles of res judicata made the first judge's determination binding). To overcome this presumption of continuing nondisability, the claimant "must prove 'changed circumstances' indicating a greater disability." *Id.* at 693; *see also id.* at 694 (because the defendant failed to identify "new"

information that "had not been presented to the first [ALJ]", it was error for the second ALJ to "reopen the prior determinations concerning the claimant's ability to perform his past relevant work"); *cf. Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (applying *Chavez* and finding that, where the "entirety of the medical evaluations presented with respect to the [claimant's] present application were conducted after [claimant's] initial disability determination[,] [t]hese evaluations necessarily presented new and material information not presented to the first ALJ").

Social Security Acquiescence Ruling ("SS AR") 97–4(9) provides guidance on *Chavez*:

> In order to rebut the presumption of continuing nondisability, a claimant must prove "'changed circumstances' indicating a greater disability." In addition, the court [in *Chavez*] indicated that where the claimant rebuts the presumption by proving a "changed circumstance," principles of res judicata require that certain findings contained in the final decision by the ALJ on the prior claim must be given some res judicata consideration in determining whether the claimant is disabled with respect to the unadjudicated period involved in the subsequent claim. The court concluded that where the final decision on the prior claim, which found the claimant not disabled, contained findings of the claimant's [RFC], education, and work experience, [the agency] may not make different finding in adjudicating the subsequent disability unless there is new and material evidence relating to the claimant's [RFC], education or work experience.

SS AR 97-4(9), 1997 WL 742758, at *2.[4] Changed circumstances include a change in the claimant's age category, an increase in the severity of an impairment, and the alleged existence of an impairment not previously considered. *Id.* at *3. Although the presence of additional impairments rebuts the general presumption of nondisability, that alone is insufficient to rebut the specific findings of the prior decision. *Chavez*, 844 F.2d at 694. Instead, there must be "new and material" evidence relating to each specific finding. *See* SS AR 97–4(9), 1997 WL 742758, at *3.

After a final agency determination of nondisability, where the claimant experiences improvement in the nature of his or her limitations and pain allegedly suffered, an ALJ may

---

[4] Acquiescence Rulings are Social Security Administration policy statements issued in response to the Court of Appeals' holdings, and they "describe the administrative case and the court decision, identify the issue(s) involved, and explain how we will apply the holding, including, as necessary, how the holding relates to other decisions within the applicable circuit." 20 C.F.R. § 404.985(b). They are binding on the Social Security Administration, 20 C.F.R. § 402.35(b)(2); and are accorded deference by reviewing courts, *McNabb v. Barnhart*, 340 F.3d 943, 944–45 (9th Cir. 2003).

8

determine that a claimant's condition has improved. *See Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985) (where claimant's first application for benefits was denied, the presumption of continuing nondisability applied, and ALJ properly determined that claimant's condition had "improved rather than deteriorated" in the period leading to the second application for benefits). "In general, the Commissioner bears the burden of establishing that a claimant has experienced medical 'improvement' that would allow him [or her] to engage in substantial gainful activity." *Chao v. Astrue*, No. 2:10–cv–01972 KJN, 2012 WL 868839, at *5 (E.D. Cal. Mar. 13, 2012) (citing *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983) (to terminate benefits after they were previously awarded, it is the defendant's burden to "come forward with evidence of improvement," and such evidence must be reviewed under the "substantial evidence standard")). An ALJ's improper reliance on the *Chavez* presumption is legal error warranting remand. *Perales v. Kijakazi*, No. 2:21-cv-00055-DAD-JDP (SS), 2022 WL 4226171, at *3 (E.D. Cal. Sept. 13, 2022) (citing *Vasquez v. Astrue*, 572 F.3d 586, 598 (9th Cir. 2009)).

**B.     The ALJ Improperly Found that There Were No Changed Circumstances**

In 2018, the ALJ assessed the following RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] would be limited to jobs that requires nothing beyond monocular vision such as jobs that can be performed with single-eyed vision. [Plaintiff] should not work in environments that expos[e] her to extreme levels of cold temperatures, extreme levels of moisture/wetness, extreme levels of vibrations, or concentrated forms of respiratory irritants such as gases, smokes, and fumes. [Plaintiff] should not work in environments that exposes her to unprotected heights or machinery with moving mechanical parts. [Plaintiff] is capable of performing non-complex jobs that requires no more than simple routine tasks and should not work in environments where they would have contact with members of the general public.

(AR 143.) The ALJ formulated an identical RFC in the present decision. (AR 25–26.)

In coming to the RFC determination, the ALJ appears to have found that Plaintiff had not rebutted the presumption of nondisability. The ALJ's decision notes Plaintiff was found "not disabled" in the prior decision, that much of the evidence provided by Plaintiff covered the already adjudicated period, and the evidence from February 8, 2018, forward revealed minimal abnormalities and generally stable objective findings. (AR 27.) The ALJ further noted all four

9

state agency reviewing sources found that the *Chavez* rule applied and fully adopted the findings of the prior ALJ, and there were no medical opinions that supported finding functional limitations that differed from those detailed in the prior ALJ's decision. (AR 29.) Thus, by adopting the prior decision's RFC finding, it appears the ALJ found no changed circumstances and gave res judicata effect to the RFC findings in the 2018 decision.

The ALJ's finding of no changed circumstances, however, is not supported by substantial evidence. Specifically, the ALJ failed to explain how the three new severe impairments of "[r]esiduals from syphilis," major depressive disorder, and PTSD—conditions either deemed nonsevere or not assessed at all in 2018 when the same RFC was assessed—could demonstrate no changed circumstances, and, therefore, that Plaintiff had the same nonexertional limitations as she did in 2018. *See Goodlow v. Comm'r of Soc. Sec.*, No. 1:17-cv-00667-JDP, 2018 WL 4698333, at *4 (E.D. Cal. Sept. 29, 2018) (finding the ALJ's reliance on the *Chavez* presumption was erroneous because, *inter alia*, the ALJ identified a new impairment that the prior ALJ had not found, amounting to changed circumstances). For example, though the prior ALJ's 2018 decision contains a discussion of Plaintiff's history of HIV/AIDS, the opinion does not discuss syphilis. (*See* AR 138–48.) The prior decision also referenced minimal evidence as to Plaintiff's symptoms of depression and PTSD, but highlighted that Plaintiff did not receive psychiatric treatment and during the mental status evaluation, she showed no evidence of cognitive impairment. (AR 144–45; *see also* AR 144 (follow-up for HIV noted diagnosis of PTSD); *id*. (Plaintiff's mood was "depressed" at a psychiatric evaluation, and diagnoses included depression due to physiological effect of general medical condition).) As to Plaintiff's lack of mental health treatment, the ALJ stated as follows:

> It is reasonable to assume that a person who claims to have severe medical problems or to be debilitated in any respect will seek out treatment in an attempt to lessen the condition, its effects, or the discomfort brought about thereby. Because [Plaintiff] has not sought treatment for her alleged disabling mental impairment(s), it suggests that she has not been suffering the level of limitations alleged. It certainly indicates that what activity restrictions may have been present have not been so severe as to preclude the performance of all work activity.

(AR 145.)

The ALJ's current opinion, however, documents evidence in the record demonstrating a worsening of Plaintiff's impairments since the date of the prior decision. For example, the ALJ

indicated that Plaintiff was diagnosed with syphilis in November or December 2017 and she had a "significant memory issue" related to her AIDS and syphilis diagnoses. (AR 28 (citing AR 514–19).) Indeed, in June 2018, Dr. McLain found that Plaintiff had continued memory issues and likely AIDS-related dementia precipitated by syphilis and other conditions, and Plaintiff's memory issues impaired her ability to attend all her appointments to receive treatment. (AR 514.) Dr. McLain noted diagnoses for memory disorder due to organic brain damage, a history of syphilis, anxiety, depression, and unspecified major depressive disorder. (AR 515, 517.) Dr. McLain indicated Plaintiff had a memory impairment, but later in the notes, indicated Plaintiff's memory was normal. (*See* AR 517–18.)

Dr. McLain's treatment notes in October 2019 further indicated that Plaintiff had neurosyphilis associated with AIDS and dementia. (AR 591.) The ALJ also noted that in October 2019, Plaintiff continued to report memory loss and issues with nerve pain. (AR 28 (citing AR 590–96).) The ALJ also acknowledged Plaintiff's hearing testimony that she had severe memory deficits with notable gaps in her memory and significant difficulties concentrating (AR 26; *see also* AR 114–15, 119–20), and in October 2020, Plaintiff's memory was not tested (AR 29, *see also* AR 636). In citing this evidence, the ALJ reasoned that "the objective findings showed [Plaintiff's] memory was normal" (AR 28), and the medical records generally suggested stability of her symptoms (AR 29). This minimal evidence suggesting stability of Plaintiff's memory impairments related to her syphilis diagnosis, however, does not amount to substantial evidence. *Biestek*, 139 S. Ct. at 1154; *Ford*, 950 F.3d at 1154.

The ALJ's conclusions regarding the other new impairments found to be severe—major depressive disorder and PTSD—fare no better. For example, the ALJ described how during the hearing, Plaintiff reported paranoia, including concerns that the Zodiac killer was following her, and intermittent crying that can begin at any point. (AR 26; *see also* AR 119, 121–23, 125.) The ALJ also cited to Plaintiff's October 2020 assessment, in which LCSW Lopez found Plaintiff's mood to be sad, worried, and anxious, her thought content to indicate depressive cognitions, and her thought process to be distractible. (AR 28 (citing AR 635).) The ALJ also acknowledged that Plaintiff exhibited symptoms of depression, trauma, and panic, including sadness, loss of interest,

11

insomnia, fatigue, irritability, flashbacks, sleep disturbances, poor focus, palpitations, trembling, shortness of breath, nausea and gastrointestinal distress, chills, and abnormal sensations. (AR 28 (citing AR 636).) Though Plaintiff's treatment notes repeatedly indicated diagnoses of PTSD and depression (*see* AR 515, 517, 552–53, 635, 637) to the point where the ALJ determined that PTSD and depression were severe impairments (AR 23), the ALJ found that Plaintiff's symptoms were stable based on minimal evidence that Plaintiff's psychiatric findings were "generally normal." (*See* AR 28.) Again, this minimal evidence alluding to stability of Plaintiff's mental impairments does not amount to substantial evidence. *Biestek*, 139 S. Ct. at 1154; *Ford*, 950 F.3d at 1154.

At several points in the opinion, the ALJ acknowledges the presence of these new, severe impairments, but appears to have dismissed them due to Plaintiff's lack of treatment and indications of stability. (*See, e.g.*, AR 28 ("While the April and May 2018 records do support the presence of severe mental impairments, the records do not suggest[] a significant change in symptoms from late 2017 to early 2018."); AR 29 ("While the October 2020 findings suggest some increase in symptoms, [Plaintiff's] overall lack of treatment and the relative stability seen in the prior records generally suggests that [Plaintiff's] symptoms have been stable since early 2018.").) Similarly, in *Perales*, the ALJ summarized the new evidence, but "essentially swept it aside because of a delay in seeking mental health treatment and a failure to take medications as prescribed." *Perales*, 2022 WL 4226171, at *5. As in *Perales*, however, such reasoning "do[es] not support the ALJ's rejection of evidence showing a significant change in [P]laintiff's mental impairments." *Id*. (citing *Regennitter v. Comm'r of Soc. Sec.*, 166 F.3d 1294, 1300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (internal quotation marks omitted)). In doing so, the ALJ failed to acknowledge evidence in the record suggesting Plaintiff's lack of treatment may have been ***caused*** by her mental impairments. (*See* AR 514 (Dr. McLain suspected Plaintiff's trouble in attending treatment appointments was due to her memory issues); AR 552 (Plaintiff stated she had gaps treatment due to negative experiences with medical providers and transportation issues).)

In sum, the ALJ's failure to identify more than minimal evidence—much less ***substantial*** evidence—of medical stability in support of the conclusion that there were no changed circumstances constitutes legal error. *See Perales*, 2022 WL 4226171, at *4 (finding the ALJ's determination that there was no evidence of changed circumstances and decision to adopt the prior decision's RFC finding under *Chavez* improper where the evidence in the record demonstrated a worsening in the plaintiff's mental impairments since the date of the prior decision). Furthermore, the ALJ's mistaken reliance on the *Chavez* presumption is not harmless. As in *Goodlow*, the ALJ's RFC analysis was driven by the *Chavez* presumption--that there were no changed circumstances since the 2018 decision, and the Acting Commissioner does not argue that the error was harmless. *See Goodlow*, 2018 WL 4698333, at *4; *see also Perales*, 2022 WL 4226171, at *3 (an ALJ's improper reliance on the *Chavez* presumption is legal error warranting remand).

## C.     Remand for Further Proceedings is Appropriate

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for 'additional investigation or explanation.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). The Ninth Circuit recognized a limited exception to this typical course, "sometimes referred to as the 'credit-as-true' rule," where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100. In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As for the last inquiry, additional "[a]dministrative proceedings are generally useful where the record 'has [not] been fully developed,'" where "there is a need to resolve conflicts and ambiguities," or where "the 'presentation of further evidence . . . may well prove enlightening' in light of the passage of time." *Id.* Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689.

Here, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional administrative proceedings would be useful. As discussed above,

the ALJ improperly found that there were no changed circumstances since the 2018 decision by the prior ALJ.  The matter should be remanded for the ALJ to reevaluate the medical evidence, reconsider all of the opinions, and reconsider Plaintiff's RFC in light of the *Chavez* presumption of nondisability.  On remand, if the ALJ again finds that there were no changed circumstances, the ALJ can then provide an adequate discussion and explanation of the specific reasons under *Chavez*. *See Perales*, 2022 WL 4226171, at *5; *Goodlow*, 2018 WL 4698333, at *4–5.  Upon reconsideration, the ALJ will also need to reevaluate their conclusions at steps four and five of the disability determination in light of any changes to Plaintiff's RFC.

### D.     The Court Declines to Determine Plaintiff's Remaining Assertion of Error

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument that the ALJ erred in failing to identify a "significant number" of jobs in the national economy.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  On remand, the ALJ should reevaluate RFC, the medical record, testimony, and any step of the five-step sequential analysis from step two onward; afford a new hearing; and permit, if needed, any supplemental evaluations of Plaintiff's mental or physical RFC.

The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

| Dated: | **July 25, 2023** | /s/ *Sheila K. Oberto* |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |